MITCHELL (MOORE v.). See Case No. 9,-770.

MITCHELL (NOELL v.). See Case No. 10,-287.

———

### Case No. 9,667.

MITCHELL v. The OROZIMBO.

[1 Pet. Adm. 250.] [1]

District Court, D. Pennsylvania. 1806.

SEAMEN—WAGES—SECOND MATE—INCOMPETENCY—MIDSHIPMAN ON FURLOUGH.

1. The second mate's wages disputed, because he was not a perfect seaman.

[2. Cited in Sherwood v. McIntosh, Case No. 12,778, to the point that if the master finds upon trial that there is on the part of the man either a want of fidelity, or a want of capacity which disqualifies him from the service, he will be justified in putting him upon a different duty. And in such a case the master will also be justified in making a reasonable deduction in the wages.]

———

[1] [Reported by Richard Peters, Jr., Esq.]

[3. Cited in The Exchange, Case No. 4,594, and in Allen v. Hallet, Id. 223, to the point that emergencies arising during a voyage may render it necessary to displace a mariner from the situation for which he is shipped, and to allot him other services on board.]

[4. Cited in brief in Knee v. American Steamship Co., Case No. 7,877, to the point that one who is advanced to a position on shipboard having a higher rate of pay attached is entitled to this higher rate, notwithstanding he signed articles for a lower rate.]

The contract for wages in this case was not denied, but proof was adduced to shew that the complainant was incompetent, and did not understand perfectly the duty of a mariner.—Yet it appeared, that he had fulfilled all the duties commonly required from a second officer, about two weeks excepted, when he was sick. At the end of this period the master intermitted his office of second mate, and turned him before the mast. It appeared from circumstances, that the captain was personally acquainted with the complainant [George Mitchell] before the contract. It was in proof that he was a midshipman in the service of the United States, on furlough, and had acted in that capacity during several cruizes.

BY THE COURT. The true ground of all such enquiries is, whether or not, there has been fraud and imposition practised? If this fact is made out, the contract is not binding on the party deceived. This is a principle in both the common and maritime laws. If one ships as an officer, or mariner, and either expressly or impliedly, professes himself a mariner capable of thoroughly executing the contract, and it turns out otherwise, this court is in the constant habit of denying wages on the claim entirely; or allowing a quantum meruit, according to circumstances. The proof of such false professions must be made out, and the fraudulent conduct designated, in some satisfactory way. In the case before me it is my belief, that the master was acquainted with the capacity of the complainant, as to seamanship; and that no fraud was practised. He made the engagement under a knowledge of the true state of the complainant's nautical abilities, or deficiencies. I am neither desirous, or accustomed to decide on other than such as appear to me legal principles. Where these justify me, I will take every fit occasion to encourage our midshipmen (having leave of the executive so to do) to enter into the merchant service, as a laudable mode of perfecting themselves in seamanship, instead of dissipating and wasting their time. I have always considered our navy a great school, among its other benefits, for teaching young men of education and respectable connexions, nautical knowledge. Although they may not be perfectly competent in all the drudgery and details of seamanship, they may, and very many do, acquire a sufficient knowledge to qualify them for commands in merchant ships. Other qualifications than those of mere seamanship, are re-

quired in those who act as officers in ships. I have had too frequent opportunities of perceiving, that many of those who are capable before the mast, are miserably incompetent on the quarter deck. Qualities, not commonly discovered by mere seamen, are here indispensably called forth. However desirable it may be, that an officer shall have gone through every grade of the occupation to which he is devoted, it often happens that those who have not practically or manually acquired their knowledge of all the duties of mariners, are among the most intelligent and trustworthy masters and officers of ships. How far these general remarks apply to the complainant, I will not undertake to decide. This seems to have been his first essay in a merchant vessel, and the master was willing to join in the experiment. After a trial for four months it appears that the captain thought himself justifiable in displacing his second mate; and occasionally putting the carpenter in his berth. No testimony is offered to shew the impropriety of this conduct. It appears that the complainant, thereafter, performed the duty of an ordinary seaman. I therefore decree, that he be paid according to contract, for four months, the time he served as second mate; and thereafter as an ordinary seaman, for the residue of the voyage.